IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN WATSON ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-1762 |
| NATIONWIDE MUTUAL INSURANCE COMPANY | : | |

FILED

! 1 2011

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

SURRICK, J.                                                    OCTOBER /2, 2011

## MEMORANDUM

Presently before the Court is Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) and Strike Pursuant to Rule 12(f). (ECF No. 3.) For the following reasons, the Motion will be granted in part and denied in part.

### I.   BACKGROUND

On November 23, 2008, Plaintiff Blanche Watson was injured when an automobile struck her vehicle from behind. At the time of the accident, Plaintiff had an automobile insurance policy issued by Defendant Nationwide. Plaintiff alleges that under the policy, Defendant was required to provide first-party medical benefits and uninsured motorist benefits. (Compl. ¶ 9, ECF No. 1.) As a result of her injuries, Plaintiff sought medical treatment from numerous physicians. (*Id.* at ¶ 12.)

Defendant contracted with several peer review organizations ("PROs") to determine whether the treatment Plaintiff received was medically reasonable and necessary. (*Id.* at ¶¶ 17-19, 32.) Based on the findings of the PROs, Defendant denied Plaintiff's various requests for payment of her medical bills. (*Id.* at ¶¶ 18, 27.) Plaintiff alleges that she provided Defendant with all of her medical documentation and that Defendant had no reasonable basis for submitting

the medical bills to a PRO. (*Id.* at ¶¶ 19, 28.) She further alleges that Defendant recklessly relied upon defective peer review reports that failed to identify specific reasons to deny coverage. (*Id.* at ¶ 27.) Plaintiff alleges that Defendant engaged in a "sham peer review process" by contracting with PROs that did not conduct fair and objective reviews of the medical records. (*Id.* at ¶ 55.)

Plaintiff filed a Complaint in the Court of Common Pleas of Lancaster County alleging breach of contract (Count I) and statutory bad faith (Count II). On March 10, 2011, Defendant removed the action to this Court based upon diversity. Thereafter Defendant filed the instant Motion to partially dismiss and strike.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 12(f) gives district courts discretion to strike from a pleading any immaterial or impertinent matter. Motions to strike are disfavored. *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). The standard is

"strict," and "only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (citations omitted). An allegation is immaterial if it has "no essential or important relationship to the claim for relief." *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291-92 (D. Del. 1995) (citations omitted). An allegation is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 1292.

## III. DISCUSSION

Defendant raises four arguments in its Motion. (Def.'s Br. 1, ECF No. 4.) Defendant argues that (1) Plaintiff's bad faith claim is preempted, (2) punitive damages are not recoverable for a breach of contract, (3) emotional distress damages are not recoverable under the bad faith statute, and (4) violations of the Unfair Insurance Practices Act are immaterial to Plaintiff's bad faith claim.

### A. Bad Faith and Preemption

In Count II of the Complaint, Plaintiff contends that Defendant violated 42 Pa. Cons. Stat. Ann. § 8371, Pennsylvania's bad faith statute. Defendant argues that to the extent Plaintiff's claim is based on Defendant's use of PROs to deny Plaintiff's first-party medical benefits, the claim must be dismissed because Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. Ann. § 1797(b), preempts the bad faith statute. (Def.'s Br. 9.)

Section 8371 provides that if a court finds that an insurer has acted in bad faith toward an insured, the court may award interest on the amount of the claim, award punitive damages against the insurer, and assess costs against the insurer. The specific provisions of § 1797(b) have been deemed an exception to the general remedy for bad faith found in

3

§ 8371. *See Schwartz v. State Farm Ins. Co.*, No. 96-160, 1996 WL 189839, at *4 (E.D. Pa. Apr. 18, 1996). The statutory scheme in § 1797(b), which governs the use of PROs, allows an insured seeking first-party medical benefits to recover benefits plus 12% interest, costs and attorneys' fees, if the court finds that the treatment was medically necessary.

It is well settled that a claim for statutory bad faith under § 8371, is preempted by § 1797(b), where the claim is based on an insurer's wrongful denial of first-party benefits. *See, e.g., Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 67 (3d Cir. 1994); *Harris v. Lumberman's Mut. Cas. Co.*, 409 F. Supp. 2d 618, 620-21 (E.D. Pa. 2006); *Seasor v. Liberty Mut. Ins. Co.*, 941 F. Supp. 488, 493 (E.D. Pa. 1996); *Bennett v. State Farm Fire & Cas. Ins. Co.*, 890 F. Supp. 440, 443 (E.D. Pa. 1995). Plaintiff may not pursue a bad faith claim under § 8371 based upon the assertion that the PROs selected by Defendant improperly denied first-party benefits.

Courts have held, however, that plaintiffs may pursue a bad faith claim under § 8371 to the extent that the claim is based on the insurer "not having properly followed or invoked the statutory procedure" governing PROs, namely, § 1797. *Panameno v. State Farm Mut. Auto. Ins. Co.*, No. 99-1490, 1999 WL 320916, at *1 (E.D. Pa. May 19, 1999) (quoting *Schwartz*, 1996 WL 189839, at *4); *see Harris*, 409 F. Supp. 2d at 621 n.4; *Champlost Family Med. Practice v. State Farm Ins.*, No. 02-3607, 2002 WL 31424398, at *2 (E.D. Pa. Oct. 29, 2002). In other words, a § 8371 claim is not barred if the insurance company's alleged bad faith conduct went beyond the scope of § 1797. For example, a plaintiff may allege that there was an abuse of the peer review process itself. *Schwartz*, 1996 WL 189839, at *4.

In the instant case, Plaintiff does not merely bring a cause of action for denial of benefits

4

under § 1797. She also alleges that Defendant improperly used a "sham peer review process and PRO reports that are based upon relatedness and causation to the accident." (Compl. ¶ 55(r).) Moreover, Plaintiff alleges that Defendant failed to employ PROs that had fair and impartial physicians authoring the reports. (*Id.* at ¶ 55(d), (n).) Although Plaintiff does not offer detailed allegations supporting the deficiency of the peer review process, she has alleged sufficient facts to withstand a motion to dismiss. *See Bacstrom v. State Farm Ins. Co.*, No. 97-219, 1998 WL 1108423, at *6 (Pa. Com. Pl. Jan. 26, 1998) (denying preliminary objections where plaintiff alleged that PRO was a sham and a captive reviewer with a financial interest in providing biased reviews); *Schwartz*, 1996 WL 189839, at *4 (denying motion to dismiss where plaintiff alleged that PRO was improperly opining on causation, rather than the appropriateness of treatment). We will, therefore, permit Plaintiff to proceed with her bad faith claim in Count II to the extent that she alleges an abuse or misuse of the peer review process.

### B.   Punitive Damages

Defendant argues that Plaintiff's claim for punitive damages in Count I, which is entitled "Contract," must be dismissed because punitive damages are not recoverable in an action for breach of contract. Count I does not specifically allege punitive damages. Defendant raises this issue because Count I incorporates earlier paragraphs in the Complaint that do allege punitive damages. (*See* Compl. ¶¶ 53-54.)

As a general rule, under Pennsylvania law, a plaintiff may not recover punitive damages for a breach of contract. *See McShea v. City of Philadelphia*, 995 A.2d 334, 340 n.5 (Pa. 2010). Even though Count I of Plaintiff's Complaint is entitled "Contract," the Court does not assert a common law contract claim. Rather Plaintiff requests relief based upon § 1797(b), which is the

statutory framework regulating the use of PROs. (Compl. ¶ 15.) Section 1797(b) specifically identifies the nature of damages a court may impose against an insurer. Section 1797(b) does not authorize punitive damages. Plaintiff concedes in her Response that she cannot recover punitive damages under § 1797(b). (Pl.'s Resp. 10, ECF No. 7.) Rather, she argues that § 1797(b) permits a court to award treble damages. Defendant's Motion does not seek dismissal of a claim for treble damages.

### C. Emotional Stress Damages

Plaintiff alleges that she suffered serious emotional distress because her bills were not paid by Defendant. (Compl. ¶ 21.) Plaintiff does not seek recovery for either negligent or intentional infliction of emotional distress as a separate cause of action. (Pl.'s Resp. 10-11.) However, Count II of the Complaint, which asserts the statutory bad faith claim under § 8371, incorporates by reference all of the preceding paragraphs. Defendant argues that Plaintiff's § 8371 claim must be dismissed to the extent that it seeks to recover emotional distress damages. We agree with Defendant that the express terms of the statute bar a recovery for Plaintiff's emotional distress. *See Duffy v. Nationwide Mut. Ins. Co.*, No. 93-1474, 1993 U.S. Dist. LEXIS 16197, at *9-10 (E.D. Pa. Nov. 10, 1993) (finding that emotional distress damages are not recoverable under § 8371). The statute explicitly lists four remedies for bad faith. Plaintiff may recover interest, punitive damages, costs, and attorneys' fees.[1] Accordingly, Plaintiff may not

---

[1] Section 8371 provides in full:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of

recover emotional distress damages under § 8371.

### D. Unfair Insurance Practices Act

Plaintiff cites the Pennsylvania Unfair Insurance Practices Act ("UIPA"), 40 Pa. Cons. Stat. § 1171.1 *et seq.*, in Count II of the Complaint. (Compl. ¶ 67.) Plaintiff's prayer for relief in Count II, however, relies only on Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371. Defendant argues that Paragraph 67 should be stricken because violations of the UIPA are irrelevant to the bad faith inquiry. (Def.'s Br. 13-14.) Plaintiff responds that UIPA violations are material in defining bad faith. (Pl.'s Resp. 11-12.)

The UIPA does not provide a private right of action. It can only be enforced by the state insurance commissioner. *Leach v. Northwestern Mut. Ins. Co.*, 262 F. App'x 455, 459 (3d Cir. 2008). There exists a split in the caselaw as to whether courts may consider alleged violations of the UIPA as part of the bad faith analysis under § 8371. To prevail on a bad faith claim under § 8371, a plaintiff must show (1) that the insurer lacked a reasonable basis for denying benefits, and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997) (recognizing that *Terletsky v. Prudential Property & Casualty Insurance Co.*, 649 A.2d 680 (Pa. Super. Ct. 1994), established the test for § 8371 causes of action). Notwithstanding this two-pronged test, the Superior Court has determined that it is appropriate to consider the UIPA when evaluating an insurer's bad faith. *See, e.g., Brickman Grp., Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 930 (Pa. Super. Ct. 2004);

---

> interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

7

*O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999); *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1233 (Pa. Super. Ct. 1994). The justification for this is that it is permissible to look to other statutes when attempting to determine the meaning of "bad faith" because § 8371 leaves the term undefined. *See Romano*, 646 A.2d at 1232-33. As of this time, the Supreme Court of Pennsylvania has not addressed the question of whether conduct that violates the UIPA qualifies as bad faith for purposes of a § 8371 claim.

Since *Terletsky*, courts in the circuit have not followed the Superior Court and have refused to consider UIPA violations as evidence of bad faith. *See Leach*, 262 F. App'x at 459 ("[I]nsofar as Leach's claim for bad faith was based upon an alleged violation of the UIPA, it failed as a matter of law."); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 505-06 (3d Cir. 2004) (applying *Terletsky* and finding that "UPMC cannot rest its bad faith claim on the violations of the UIPA"); *Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co.*, 29 F. App'x 823, 827 (3d Cir. 2002) (finding that UIPA violations are irrelevant when evaluating claims under § 8371); *Moss Signs, Inc. v. State Auto. Mut. Ins. Co.*, No. 08-164, 2008 WL 892032, at *5-6 (W.D. Pa. Apr. 2, 2008) (striking paragraphs that reference UIPA violations from the complaint); *Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 529-30 (M.D. Pa. 2007) (noting that UIPA violation does not establish bad faith per se); *Connolly v. Reliastar Life Ins. Co.*, No. 03-5444, 2006 WL 3355184, at *9 (E.D. Pa. Nov. 13, 2006) (finding that UIPA violations do not have relevance to the question of whether insurer had reasonable basis for denying benefits).[2]

---

[2] The federal cases that did consider UIPA violations in defining bad faith under § 8371 all predated *Terletsky*, which was decided in 1994. *MacFarland v. U.S. Fid. & Guar. Co.*, 818 F. Supp. 108, 110 (E.D. Pa. 1993); *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1109 (E.D. Pa. 1992); *Coyne v. Allstate Ins. Co.*, 771 F. Supp. 673, 678 (E.D. Pa. 1991).

8

In *Oehlmann*, the Court provided three reasons for refusing to recognize alleged violations of the UIPA as a basis for finding bad faith. *See* 644 F. Supp. 2d at 531. First, the standard for evaluating bad faith is found in the definitive two-part test announced in *Terletsky*. *Id*. Second, the UIPA is designed to be enforced by the insurance commissioner, and "it is not our province to usurp the Commissioner's power in this regard by de facto regulation of the insurance industry under the guise of section 8371." *Id*. Third, the UIPA regulates violations that are systemic in the insurance industry. *Id*. The court found that regulations "designed for an industry are inapposite to evaluating an individual episode of alleged bad faith." *Id*.

We agree with *Oehlmann* and the federal courts that have rejected the argument that UIPA violations can support a bad faith claim under § 8371. Accordingly, the bad faith claim in Count II of the Complaint based upon UIPA is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion will be granted in part and denied in part. An appropriate Order follows.

BY THE COURT:

_____
R. BARCLAY SURRICK, J.